```
                    UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF MISSOURI
                          EASTERN DIVISION


TERRENARA WHITE,                    )
                                    )
          Plaintiff,                )
                                    )
     v.                             )    No. 4:05 CV 1052 DDN
                                    )
JO ANNE B. BARNHART,                )
Commissioner of                     )
Social Security,                    )
                                    )
          Defendant.                )
```

**MEMORANDUM**

This action is before the court for judicial review of the final decision of the defendant Commissioner of Social Security denying plaintiff Terrenara White supplemental security income (SSI) under Title XVI of the Social Security Act (the Act), 42 U.S.C. §§ 1381 <u>et seq</u>. The parties have consented to the authority of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

Plaintiff was born on December 18, 1984. In 1998, the Social Security Administration determined that she was entitled to Child's SSI benefits based on disability.

> The claimant was originally found disabled as a child . . . based on findings of borderline intellectual functioning, a hearing loss in the left ear secondary to early meningitis, a short-term memory loss, concentration and attention deficits, fine and gross motor skills delays, social withdrawal, and depression.

(Tr. 19.) After she turned 18 in 2002, she was determined to be no longer disabled under the Act. A reconsideration decision was unfavorable and plaintiff sought a hearing before an Administrative Law Judge. Following the hearing, the ALJ ruled against plaintiff, finding that she was not disabled. When the Appeals Council denied review of the ALJ's decision, the ALJ's decision became the final decision of the Commissioner of Social Security subject to judicial review in this action under 42 U.S.C. § 405(g).

## A. General Legal Standard

The court's role on review is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. Pelkey v. Barnhart, 433 F.3d 575, 577 (8th Cir. 2006). "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support the Commissioner's conclusion." Id. In determining whether the evidence is substantial, the court considers evidence that detracts from, as well as supports, the Commissioner's decision. See Prosch v. Apfel, 201 F.3d 1010, 1012 (8th Cir. 2000). So long as substantial evidence supports that decision, the court may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome or because the court would have decided the case differently. See Krogmeier v. Barnhart, 294 F.3d 1019, 1022 (8th Cir. 2002).

To be entitled to disability benefits, a claimant must prove she is unable to perform any substantial gainful activity due to a medically determinable physical or mental impairment which would either result in death or which has lasted or could be expected to last for at least 12 months. See 42 U.S.C. § 1382c(a)(3)(A). A five-step regulatory framework governs the evaluation of disability in general.

> The five part test is as follows: 1) whether the claimant is currently employed; 2) whether the claimant is severely impaired; 3) whether the impairment is, or is comparable to, a listed impairment; 4) whether the claimant can perform past relevant work; and if not, 5) whether the claimant can perform any other kind of work.

Cox v. Barnhart, 345 F.3d 606, 608 n.1 (8th Cir. 2003); see 20 C.F.R. § 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987) (describing the five-step process). If the Commissioner finds that a claimant is disabled or not disabled at any step, the next step is not reached. 20 C.F.R. § 404.1520(a)(4). As stated in Step 5, if the Commissioner finds that the claimant cannot perform her past relevant work (or if she has not ever performed relevant work), she is entitled to disability benefits unless it is proven that there is work in the national economy that the claimant can perform. 20 C.F.R. § 920(g)(2).

## B. The ALJ's Decision

In his decision dated April 27, 2004, the ALJ made specific findings of fact:

1. Plaintiff has never engaged in substantial gainful activity and thus has no past relevant work.

2. Plaintiff suffers from low average intelligence, a mild sensorineural hearing loss on the left side, and a recent onset of plantar impairment of the right foot that is presumed to be treatable.

3. None of these impairments, or combination of them, equals any impairment in the Commissioner's Listing of disabling impairments.

4. Plaintiff has the residual functional capacity to perform the non-exertional requirements of work, with some limitations.

5. Plaintiff is 19 years of age, has a limited education, is literate, and can communicate in English.

6. Plaintiff has no transferrable skills.

7. Plaintiff can perform the jobs of dining room helper and janitor.

8. Plaintiff's disability status ended on April 15, 2003.

(Tr. 19-20.)

## C. Plaintiff's Grounds for Relief

Plaintiff alleges the following grounds for relief: (1) the ALJ failed to properly consider plaintiff's subjective complaints; (2) the ALJ failed to properly consider the appropriate legal standards when determining her residual functional capacity (RFC); and (3) the hypothetical question submitted to the vocational expert was legally flawed. Defendant gainsays plaintiff's arguments and argues that the ALJ's decision is supported by substantial evidence.

## D. Discussion
### Ground 1: Plaintiff's Subjective Complaints

Plaintiff argues the ALJ erred when discrediting her subjective complaints. "The adjudicator must give full consideration to all of the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians . . . ." Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). Factors to be considered include the claimant's daily activities, the duration, frequency, and intensity of the pain, any precipitating factors, whether the claimant has been taking pain medication and the dose, and functional restrictions. Id.; Depover v. Barnhart, 349 F.3d 563, 566 (8th Cir. 2003). The ALJ may not discredit subjective complaints based solely on personal observation. Polaski, 739 F.2d at 1322. "Subjective complaints may be discounted if there are inconsistencies in the record as a whole." Singh v. Apfel, 222 F.3d 448, 452 (8th Cir. 2000). "An ALJ who rejects such complaints must make an express credibility determination explaining the reasons for discrediting the complaints." Id.

Here, the ALJ properly considered and discredited plaintiff's subjective complaints. While plaintiff argues that her ability to do light housework activities should not preclude a finding of disability, the level of activity carried out by plaintiff is much more than light housework. See Easter v. Bowen, 867 F.2d 1128, 1130 (8th Cir. 1989). She did many household chores, took public transportation, attended school and community college, read books, watched television, watched movies, and went shopping. Plaintiff testified at the hearing that she has no problems sitting, walking, or standing. While she cannot lift or carry items weighing more than 20 pounds, she can lift a case of soda. She testified she has no problems using her hands. (Tr. 36-37.)

Further, plaintiff complained of a significant hearing loss, but this was not supported by the medical records or the observations of the ALJ at the hearing. Medical records indicated she could understand conversational speech, and she was able to hear at the hearing. Her back pain and foot problems were not supported by any medical evidence

on the record.  Comstock v. Chater, 91 F.3d 1143, 1147 (8th Cir. 1996) (lack of medical evidence contradicted plaintiff's complaints).

The ALJ did not err when discrediting plaintiff's subjective complaints of pain.


Ground 2:  Plaintiff's RFC

Plaintiff argues that the RFC attributed to her by the ALJ is not supported by substantial evidence.  Specifically, she argues that the ALJ failed to consider the opinions of O.E. Gallardo, M.D., and M. Lee Borrine, Ph.D., which are the only medical opinions about her mental condition, contrary to the Eighth Circuit's rulings in Singh v. Apfel, 222 F.3d 448 (8th Cir. 2000), and Lauer v. Apfel, 245 F.3d 700 (8th Cir. 2001).

These consultants rendered opinions that plaintiff's mental abilities had limitations.  On April 14, 2003, a Psychiatric Review Technique form was completed by Dr. Borrine based upon the documentary record.[1]  He found plaintiff had mild restrictions on her daily activities, moderate difficulties with social functioning and maintaining concentration, persistence, and pace, and no repeated episodes of decompensation.  He noted that the school's IEP (Individualized Education Plan) of November 2002 indicated that she was pleasant and outgoing, cooperative, good natured, and had an attitude and willingness to trust.  He found she maintained positive relationships with her peers and adults, that she was in the low average range of intellectual functioning, and that she noted some difficulty getting along with others.  (Tr. 311-25.)

On July 7, 2003, on a Mental Residual Functional Capacity Assessment form, Dr. Borrine opined that plaintiff's mental residual functional capacity did not significantly limit her abilities to remember locations and work like procedures, to understand and remember short instructions, to carry out short instructions, to perform activities within a schedule, to sustain a routine without special

---

[1]The record does not indicate that he personally examined plaintiff.

-5-

supervision, to work in coordination with others, and to make simple, work related decisions. He found she was moderately limited in her abilities to understand and carry out detailed instructions, and to maintain attention for long periods of time. (Tr. 326.)

Dr. Borrine also found that plaintiff was moderately limited in her ability to complete a normal work day without interruptions from psychologically based symptoms, and in her ability to get along with coworkers or peers without distracting them. She had no significant adaptation problems. (Tr. 327-28.)

On July 7, 2003, O.E. Gallardo, D.O., M.D., completed a Psychiatric Review Technique form.[2] He recorded his opinions that plaintiff had mild restrictions of daily living, moderate difficulties maintaining social function and concentration, persistence, and pace, and no repeated episodes of decompensation. (Tr. 330-43.)

Also, on July 7, 2003, Dr. Gallardo completed a mental RFC form. He found plaintiff was moderately limited in her abilities to understand detailed instructions, carry out detailed instructions, and maintain attention for extended periods of time. She was also moderately limited in her ability to complete a normal workweek without interruptions, and to get along with co-workers. He opined she was capable of performing simple work, and simple repetitive tasks. She needed minimal personal interaction. (Tr. 344-46.)

The RFC is "the most [a claimant] can still do despite" his or her physical or mental limitations. 20 C.F.R. § 404.1545(a). When determining plaintiff's RFC, the ALJ must consider all relevant evidence, but ultimately, the determination of the plaintiff's RFC is a medical question. Lauer v. Apfel, 245 F.3d at 704. As such, the determination of plaintiff's ability to function in the workplace must be based on some medical evidence. Id.; see also Nevland v. Apfel, 204 F.3d 853, 858 (8th Cir. 2000). In Singh v. Apfel, the Eighth Circuit stated that the "Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist."

---

[2]The record does not indicate that Dr. Gallardo personally visited with plaintiff.

-6-

222 F.3d at 452. The gist of plaintiff's argument is that, contrary to the opinions of Drs. Gallardo and Borrine, the ALJ rendered his own medical opinions in determining plaintiff's RFC.

The ALJ found

> no persuasive medical reason why the claimant could not perform work at all levels of exertion, so long as they did not require more than simple, repetitive tasks or more than very simple reading skills, or the ability to make change accurately, and were not jobs with unusually high levels of noise exposure, or jobs where normal bilateral hearing would be critical either as a necessity for satisfactory job performance, or as a factor preventing serious injury to either the claimant or to others.

(Tr. 17.) Using the Dictionary of Occupational Titles, the ALJ found that plaintiff could be a dining room helper or janitor. Both jobs required lifting no more than 20 pounds and minimal social interaction. The ALJ considered the testimony of the VE, but found that plaintiff did not have any mental limitations beyond those listed in her RFC. (Tr. 17.)

The ALJ noted that no physician implied plaintiff was physically or mentally disabled, and she takes no medication. The ALJ noted he had no trouble understanding her speech at the hearing. He found that she had no worse than low average intelligence, and was not illiterate. (Tr. 18.)

The ALJ noted that the medical evidence showed no sign of the impairments that led to the disability finding in 1998, including memory loss, concentration and attention deficits, motor skill delays, and depression. He found her social isolation was a lifestyle choice and not pathological. (Tr. 18.)

The ALJ found that plaintiff had the following RFC:

> The claimant has the residual functional capacity to perform the nonexertional requirements of work except probably for jobs that require more than simple, repetitive tasks or more than very simple reading skills, or the ability to make change accurately, and jobs with unusually high levels of noise exposure, or jobs where normal bilateral hearing would be critical either as a necessity for satisfactory job performance, or as a factor preventing serious injury to either the claimant or to others.

(Tr. 20.)

To show that the ALJ applied his own expertise to the determination of plaintiff's RFC, plaintiff points to the colloquy between the ALJ and plaintiff's counsel near the end of the evidentiary hearing and that the ALJ expressed a medical opinion in the interpretation of the evidence. In that portion of the record, plaintiff's counsel argued that plaintiff's earlier determination of disability should continue, supported by the opinions of Drs. Gallardo and Borrine. (Tr. 65.) In response, the ALJ stated that he was not sure the earlier findings of borderline intellectual functioning, neural hearing loss, and being a slow learner, continued to exist, and that these conditions were the functional equivalent of the impairments in the Commissioner's Listing of disabling impairments. (Tr. 65-66.) In this discussion, the ALJ also adverted to the evidence of plaintiff's most recent IQ test scores and said he did not understand why plaintiff was continued on benefits with these scores. (Tr. 66.) Plaintiff's counsel then referred to plaintiff's earlier scores and hearing condition, granting that "her IQ scores have certainly fluctuated. I would grant that, but the physicians in this matter appear to have reviewed all those scores and appear to have concluded that she has this combination--." (Id.) The attorney and the ALJ then discussed the disparity of plaintiff's IQ test scores, the more recent ones being substantially higher. The ALJ then went on to opine that the 11+ point difference between the 69 in 1997, the 80 in 2001, and the 81 in 2002, in his many years experience reviewing such test scores, could be explained by plaintiff, on the day she was tested, having had a fight with her brother, or skipping breakfast, or "who knows." (Tr. 67.) The ALJ then stated, "But my problem is I have to evaluate what this all really means . . . ." ( Id.)

In his formal written opinion, the ALJ found that plaintiff did not suffer from any memory loss, significant concentration and attention deficits, "motor skills delays," or depression. He determined that any social isolation that plaintiff experiences is due to her lifestyle choice and not the result of a pathological condition. He adverted to her school records that indicate that she is able to get along well with others. (Tr. 18.) The ALJ found:

> The claimant's basic abilities to think, understand, communicate, concentrate, get along with other people, and handle normal work stress have never been significantly impaired on any long-term basis. There has been no documented serious deterioration in her personal hygiene or habits, daily activities or interests, effective intelligence, reality contact, thought processes, memory, speech, mood and affect, attention span, insight, judgment, or behavior patterns over any extended period of time since April 2003, or since much sooner than that. The claimant has not been referred for formal treatment to a psychiatrist, psychologist, or other mental health professional in recent years. At the hearing she displayed no obvious signs of depression, anxiety, memory loss, or other mental disturbance.

(Id.)

The ALJ did not specifically cite the reports of Dr. Gallardo or Dr. Borrine. The ALJ stated that plaintiff's most recent mental evaluation scores, made in December 2002, indicated that she had a low average intelligence, that she may struggle with reading, but that she is not illiterate.[3] The reason given by the ALJ for selecting the most recent scores goes to the heart of the plaintiff's argument:

> On the issue of intellectual functioning, common sense dictates that one cannot manifest a higher degree of intelligence than what she possesses, although she can manifest a lower one. Therefore, the highest recorded scores, and the most recent ones, from December 2002, are the most accurate ones. They show the claimant as having no worse than low average intelligence.

(Tr. 18.)

With all due respect to his experience, these statements by the ALJ in his written opinion, and in the hearing colloquy with counsel recounted above, in explaining the selection of the higher intelligence testing scores are expert opinions, which the ALJ has not been shown

---

[3] In his decision, the ALJ recounted the IQ tests administered to plaintiff in November and December 2002. During the 2002-2003 school year, plaintiff received grades of A to C, except for one D in one class in one quarter. The ALJ stated, "Her teachers described her as respectful, but easily frustrated with academic tasks at times. The claimant had vocational training between March and June 2003, during which she demonstrated an ability to do simple, repetitive tasks associated with jobs such as physical therapy aide, day care assistant, and merchandise processor. . . ." (Tr. 17.)

qualified to give and is not entitled to use as a basis for a decision. Shontos v. Barnhart, 328 F.3d 418, 427 (8th Cir. 2003); Lauer v. Apfel, 245 F.3d at 703; Ness v. Sullivan, 904 F.2d 432, 434-35 (8th Cir. 1990); Davis v. Callahan, 985 F. Supp. 907, 912 (S.D. Iowa 1997).

The reasons the ALJ discredited the opinions of Drs. Gallardo and Borrine is important in this case, because the VE testified that, if a hypothetical individual had the limitations imposed by these doctors, such a person would have trouble maintaining employment. Further, the RFC must be based on some medical evidence. Lauer, 245 F.3d at 704. Without considering these limitations, the RFC attributed to plaintiff is not supported by any medical evidence.

Defendant argues that plaintiff's daily activity of reading books, and her school records that indicate she was able to perform simple, repetitive tasks, support the RFC attributed by the ALJ. While these facts may support the RFC, they do not appear complete when the opinions of the consulting experts are considered and no explanation is given about why they are discredited.

Therefore, the RFC attributed to plaintiff is not supported by substantial medical evidence on the record.

### Ground 3: The Hypothetical Question

Plaintiff argues that the hypothetical question put to the vocational expert was flawed. "Testimony from a vocational expert constitutes substantial evidence only when based on a properly phrased hypothetical question." Grissom v. Barnhart, 416 F.3d 834, 837 (8th Cir. 2005) (quoting Tucker v. Barnhart, 363 F.3d 781, 784 (8th Cir. 2004)). "The hypothetical question must include all the claimant's impairments supported by substantial evidence in the record as a whole." However, it does not need to include those impairments that the ALJ does not find credible. Grissom, 416 F.3d at 837 (mental conditions, if supported by the record, must be considered by VE); Goff v. Barnhart, 421 F.3d 785, 794 (8th Cir. 2005).

At the March 30, 2004 hearing, vocational expert (VE) Brenda Young testified that, considering plaintiff's education and work experience, she had no transferable skills. The VE was asked to assume a

-10-

hypothetical individual who is 19 years old, has a 12th grade special education, has no work experience, has been diagnosed with borderline intellectual functioning, has a full-scale IQ of 86, has a mild hearing loss in the left ear, normal hearing in her right ear, some speech difficulties but has taken speech class that has made her speech slower and more clear, whose word recognition is normal in both ears, whose tympanogram is within normal limits for both ears, whose restrictions on daily living are mild, who has moderate difficulties with social functioning, and who has moderate difficulties with persistence and pace.

The ALJ further hypothesized that the subject also has no repeated decompensation, is moderately limited in her ability to understand and remember and carry out detailed instructions, maintains attention for extended periods, completes a normal workday and week without interruption, performs at a consistent pace, and gets along with others. Such a person would be capable of performing simple work with two- to three-step repetitive tasks. The ALJ based this hypothetical on the assessments of Dr. Borrine and Dr. Gallardo. (Tr. 60-61.)

The VE testified that such a person "might have difficulty maintaining employment." However, when considering that some reports indicated only a mild impairment in terms of social skills and pace, the VE testified that such a person could do simple, repetitive work, such as a dining room helper or janitor. None of those jobs required lifting over 20 pounds. (Tr. 61-62.)

When considering her work evaluations at the day care, Value City, and the senior center, as representative of what she could do, the VE testified that a one-day evaluation at a job site would not necessarily change her opinion. If she did not consider the moderate limitation of completing a work day or work week in the first hypothetical, such a person could perform the dining room helper or janitor job. (Tr. 64-65.)

The hypothetical question posed to the VE contained the limitations imposed by the consulting physician and psychologist, Drs. Gallardo and Borrine, and the VE opined that such a person would not be able to sustain employment. However, the ALJ discounted the VE's

-11-

opinion, because he did "not find any mental assumptions [,described earlier in the opinion,] to be valid or justified by the preponderance of the medical evidence and opinions in this record." (Tr. 17-18.) As stated above, the ALJ did not give a legally sufficient reason for discrediting those consultants' opinions or the opinion of the VE, but instead improperly applied his own medical expertise to the issue.

For the reasons set forth above, the decision of the Commissioner of Social Security is reversed under Sentence 4 of 42 U.S.C. § 405(g) and the action is remanded to the Commissioner for further proceedings. On remand, the ALJ shall properly reconsider the opinions of Dr. Borrine, Dr. Gallardo, and the vocational expert, and shall expand the record with relevant information, if the current record is insufficient to determine whether plaintiff is disabled or not.

An appropriate order is issued herewith.

/s/ David D. Noce
**DAVID D. NOCE**
**UNITED STATES MAGISTRATE JUDGE**

Signed on September 22, 2006.